UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| M.M., as guardian for her minor daughter, O.M.,<br><br>      Plaintiffs,<br>  v.<br><br>TACOMA SCHOOL DISTRICT NO. 10, et al.,<br><br>      Defendants. | CASE NO. 3:21-CV-05865-LK<br><br>ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING |

This matter comes before the Court on Defendants' motion to compel compliance with its subpoena duces tecum and for a protective order. Dkt. No. 44. For the reasons discussed below, the motion is denied without prejudice, and the Court orders supplemental briefing regarding (1) what (if any) rights O.M.'s prior adoptive parents may have that are relevant to this suit, and (2) whether the adoption proceedings pose any conflict of interest with respect to these proceedings.

### I. BACKGROUND

Plaintiff M.M. alleges that she is the legal guardian of O.M. Dkt. No. 1 at 1. She is in the

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 1

process of adopting O.M. in Georgia state court. Dkt. No. 46-13 at 3. M.M. is suing Defendants for the alleged sexual abuse that O.M. endured as a kindergartener at Grant Elementary School in Tacoma. *See generally* Dkt. No. 1. Defendants seek to obtain O.M.'s juvenile records maintained by the Washington State Department of Children, Youth, and Families ("DCYF"). Dkt. No. 44 at 3. After M.M. indicated during her deposition that she does not possess a copy of O.M.'s DCYF file, Defendants subpoenaed DCYF for those records. *Id.* The subpoena commanded production of the following information:

> Any and all records relating to [O.M.] including, but not limited to complete Washington State Department of Children, Youth & Families ("DCYF") complete DCYF, [Child Protective Services], and/or FamLink Files, medical, psychological, alcohol, chemical dependency treatment, sex offender status, and any related CPS referrals or law enforcement contracts [sic] of [O.M.], her foster care parents or legal guardians, her biological parents, and any other biological relations.

Dkt. No. 46-1 at 5–6. Thus began Defendants' unsuccessful months-long odyssey to obtain the requested records.

A DCYF records analyst responded to the subpoena by indicating that, in order to provide records with less redactions, Defendants needed to obtain a "signed DCYF authorization form 17-063 and photo identification from [O.M.] and a parent or legal guardian." Dkt. No. 46-2 at 2; *see id.* at 4–5 (authorization form). Defendants thereafter submitted a completed form executed by M.M. authorizing the release of all records to defense counsel. Dkt. No. 44 at 3; Dkt. No. 46-4 at 3; *see* Dkt. No. 46-6 at 4–5 (executed authorization form). This was insufficient, however, and DCYF reiterated its need for photo identification from a parent or legal guardian. Dkt. No. 46-4 at 2. It also emailed defense counsel a formal objection letter. Dkt. No. 46-5 at 2–3. There DCYF indicated that it was "objecting to providing records of [O.M.] under CR 45(c)(2)(B)" because its "client records are confidential under state and federal law and cannot be released without either a valid authorization executed by the parent, child, . . . and/or legal guardian that authorizes the

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 2

release of records . . . , or a valid court order[.]" *Id.* at 3. DCYF enclosed an authorization form and reiterated its need for photo identification: "The enclosed authorization form, if signed by [O.M.] or a parent or legal guardian of [O.M.] and a copy of their photo identification, would allow release of [O.M.]'s records to you." *Id.*

Defendants then provided an executed authorization form and a scanned image of M.M.'s driver's license. Dkt. No. 46-6 at 2, 4–6. This was again insufficient. According to DCYF, it could not process the request without "additional information"; specifically, it needed "valid guardianship/adoption orders that say [M.M.] is [O.M.]'s legal guardian[.]" Dkt. No. 46-7 at 2. Defendants provided a copy of a January 2020 state court order appointing M.M. and her husband temporary guardians of O.M. Dkt. No. 46-8 at 2, 7. The matter would remain unsettled, though. A DCYF records analyst called defense counsel soon thereafter to inform her that this guardianship order "did not serve to resolve the possibility of any objections from [O.M.'s] previous adoptive parents, for whom no termination of parental rights had been received." Dkt. No. 46 at 3–4.

Following additional discovery, Defendants supplied DCYF with a copy of M.M.'s petition for adoption describing how O.M.'s previous adoptive parents surrendered their parental rights. Dkt. No. 46-9 at 2.[1] They also attached a copy of M.M.'s supplemental discovery responses, in which she indicates that the previous parents have surrendered their parental rights. Dkt. No. 46-9 at 2; *see also id.* at 10–12 (March 2016 court order granting previous parents' petition for a decree of adoption as to O.M.); *id.* at 13–19 (M.M.'s December 2019 petition for adoption seeking to terminate previous parents' rights and indicating that the previous parents have "executed surrenders"); *id.* at 34–35 (M.M.'s supplemental answer to Interrogatory No. 8 stating that she and

---

[1] Counsel's subsequent efforts to obtain documentation (i.e., a court order) memorializing termination of the previous adoptive parents' rights proved unsuccessful. M.M. maintains that those documents (to the extent they exist) are not in her possession. Dkt. No. 44 at 4; *see* Dkt. No. 46-10 at 2–3.

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 3

her husband "obtained guardianship" over O.M., and that "[t]he previous adoptive parents signed over their rights").[2] DCYF never responded. Dkt. No. 44 at 5; Dkt. No. 46 at 4.

This motion to compel followed. Defendants served DCYF with a copy, Dkt. No. 44 at 11, and DCYF has since confirmed that it is aware of the motion, Dkt. No. 48 at 2. DCYF has not, however, filed a response or otherwise moved to quash the subpoena.

## II.   DISCUSSION

The Court first addresses Defendants' motion to compel DCYF's compliance with their subpoena duces tecum. It then takes up the motion for a protective order. Finally, it discusses the issues the parties should address in supplemental briefing.

### A.   Motion to Compel

General discovery limitations apply with equal force to third-party subpoenas. *Fernandez-Medina v. Olivarez*, No. 3:20-CV-05703-RAJ-JRC, 2022 WL 4120167, at *1 (W.D. Wash. Sept. 9, 2022) (citing *Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006)). A party issuing a subpoena is thus entitled to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). And the sought-after information "need not be admissible in evidence to be discoverable." *Id.* The Court may, however, limit discovery for several reasons, including when the discovery at issue "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

A non-party "commanded to produce documents" pursuant to a subpoena "may serve on the party or attorney designated in the subpoena a written objection" to the information requested.

---

[2] M.M.'s adoption of O.M. is not yet finalized and the water remains murky as to whether the previous adoptive parents' rights have been terminated. *See* Dkt. No. 46-13 at 3 (Q: "[M]y understanding is that the adoption process is still ongoing or has that been finalized?" A: "Still ongoing. Not finalized. Surrender is when everything has been signed, and we're still at that point.").

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 4

Fed. R. Civ. P. 45(d)(2)(B); *see, e.g.*, Fed. R. Civ. P. 45(e)(2)(A) (governing non-party's objection under claim of privilege or work product doctrine). "The apparent relevance of the information a subpoena seeks informs the extent to which its burden is undue, and the court must balance relevance, the requesting party's need for the information, and the hardship to the subpoena's target." *Simplex Mfg. Co. v. Chien*, No. C12-835-RAJ, 2012 WL 3779629, at *1 (W.D. Wash. Aug. 31, 2012) (citing *Gonzalez*, 234 F.R.D. at 680). The party opposing the subpoena bears the burden of showing that it is unduly burdensome, *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966), and the district court's decision on a motion to compel compliance is ultimately discretionary, *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 813 (9th Cir. 2003).

As an initial matter, the resisting non-party must serve its objection on the subpoenaing party "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). Defendants' subpoena specified November 21, 2022 at 9:30 a.m. as the date and time for compliance, and service of the subpoena was effectuated on November 15, 2022. Dkt. No. 46-1 at 6, 10. DCYF did not serve its written objection on defense counsel until December 15, 2022. Dkt. No. 46-5 at 2–3. Its objection was therefore untimely. And "[a] party who does not timely object to a Rule 45 subpoena waives any objection to the subpoena." *Uzzell v. Teletech Holdings, Inc.*, No. C07-0232-MJP, 2007 WL 4358315, at *1 (W.D. Wash. Dec. 7, 2007). The Court recognizes, however, that it has an independent duty to shield DCYF from burdensome discovery requests. *See* Fed. R. Civ. P. 45(d)(1); *Xu v. Weis*, No. 2:22-CV-00118-TL, 2023 WL 2043540, at *2 (W.D. Wash. Feb. 16, 2023).

Defendants ground their entitlement to O.M.'s DCYF file in Section 13.50.100 of the Revised Code of Washington. Dkt. No. 44 at 8. This statute protects confidential juvenile records like the ones at issue here and directs that they "shall be released only pursuant to [Section

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 5

13.50.100] and RCW 13.50.010." Wash. Rev. Code § 13.50.100(2).[3] Defendants specifically point to Section 13.50.100(7), which provides that "[a] juvenile, his or her parents, the juvenile's attorney, and the juvenile's parent's attorney, shall, upon request, be given access to all records and information collected or retained by a juvenile justice or care agency which pertain to the juvenile[.]" The statute vests the juvenile care agency (here, DCYF),[4] with discretion to withhold the information at issue—"subject to other order of the court"—if it determines that release "is likely to cause severe psychological or physical harm to the juvenile or his or her parents." *Id.* § 13.50.100(7)(a). If the agency denies access to the records, "[a] juvenile or his or her parent . . . may file a motion in juvenile court requesting access to the records." *Id.* § 13.50.100(8) ("The court shall grant the motion unless it finds access may not be permitted according to the standards found in subsection (7)(a) and (b) of this section.").

Defendants contend that Section 13.50.100(7) "fully applies because there is no likelihood of severe harm to [O.M.] or her parents," and they are not seeking (1) records pertaining to counseling or medical services that O.M. voluntarily sought or (2) identifying information for reporters of alleged child abuse and neglect. Dkt. No. 44 at 8; *see* Wash. Rev. Code § 13.50.100(7)(b)–(c). The subpoena, however, is not so limited. *See* Dkt. No. 46-1 at 6. Defendants would be well-advised to narrow its scope if they intend to renew their efforts to obtain DCYF's records. More importantly, Defendants sprint past a fundamental hurdle: M.M. is not yet a "parent" of O.M. for purposes of the statute.

Again, Section 13.50.100(7) provides that "[a] juvenile, his or her *parents*, the juvenile's attorney, and the juvenile's *parent's* attorney, shall, upon request, be given access to all records

---

[3] Defendants do not cite Section 13.50.010 as a basis for release of the records here, and the Court does not find it applicable to these circumstances aside from the definitions (or lack thereof) in the Section.

[4] The statute defines "[j]uvenile justice or care agency" to include DCYF. Wash. Rev. Code § 13.50.010(1)(b).

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 6

and information collected or retained by a juvenile justice or care agency which pertain to the juvenile[.]" (Emphasis added.) Title 13 specifically differentiates between a "parent" or "parents"—defined as the "*parent* or *parents* who have the right of legal custody of the child"—and a "custodian"—defined as "the *person* who has the legal right to custody of the child." *See id.* § 13.04.011(3), (7) (emphasis added). Thus, a non-parent legal guardian "who has the legal right to custody of the child" (such as M.M.) is not the same as a "parent" for purposes of the statute. And Section 13.50.100(7) makes no mention of a non-parent—whether they are a legal guardian or "custodian"—having access to the records. *See In re Dependency of J.W.H.*, 57 P.3d 266, 270 (Wash. 2002) (the legislature is presumed to say exactly what it means).

Washington lawmakers have carefully circumscribed the definition of "parent" across other statutes as well. For example, the Uniform Parentage Act ("UPA")—which was enacted in early 2019—distinguishes among an "acknowledged parent," an "adjudicated parent," an "alleged genetic parent," an "intended parent," a "parent," and a "presumed parent." Wash. Rev. Code § 26.26A.010(1)–(3), (13), (15), (17); *see also In re Custody of S.H.B.*, 74 P.3d 674, 680 (Wash. Ct. App. 2003) (the UPA "defines who is a parent for all purposes"). To qualify as a "parent" under the UPA, an individual must have "established a parent-child relationship under RCW 26.26A.100." Wash. Rev. Code § 26.26A.010(15). And that section does not define the "parent-child relationship" to include a legal guardian or custodian. *See id.* § 26.26A.100. Washington's Adoption Act likewise differentiates between legal guardianship and parentage. *See* Wash. Rev. Code § 26.33.020(13) (defining "parent" the same as the UPA). This statute is the only one to define "legal guardian," and it expressly excludes parents from that term: "'Legal guardian' means the department, an agency, or a person, *other than a parent* or stepparent, appointed by the court to promote the child's general welfare, with the authority and duty to make decisions affecting the child's development." *Id.* § 26.33.020(11) (emphasis added).

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 7

1    Notably, entry of a decree of adoption renders the adoptee "to all intents and purposes, and
2    for all legal incidents, the child, legal heir, and lawful issue of the adoptive parent." Wash. Rev.
3    Code § 26.33.260(1). But M.M. has not yet become O.M.'s adoptive parent. And the legislature
4    meant what it said when it limited those who may request access to records under Section
5    13.50.100(7) to the "juvenile, his or her *parents*, the juvenile's attorney, and the juvenile's parent's
6    attorney[.]" (emphasis added); see *Fode v. Dep't of Ecology*, 509 P.3d 325, 330 (Wash. Ct. App.
7    2022) ("Plain meaning is derived from the context of the provision within the statute, as well as
8    related statutes that disclose legislative intent about the provision in question."); *Rest. Dev., Inc. v.
9    Cananwill, Inc.*, 80 P.3d 598, 601–02 (Wash. 2003) ("[A] court must not add words where the
10   legislature has chosen not to include them.").[5]

11   All this compels the conclusion that M.M. does not have a legal right to O.M.'s DCYF file.
12   Because Defendants' motion was grounded in M.M.'s nonexistent right to these records, the Court
13   denies it without prejudice. Defendants may renew their motion if they can identify an alternative
14   basis for obtaining the records.

15   **B.    Motion for a Protective Order**

16   Because the Court denies Defendants' motion to compel, it denies their motion for a
17   protective order, Dkt. No. 44 at 8, as moot.

18   **C.    Request for Supplemental Briefing**

19   Because O.M. is a minor, this case must be brought by an appropriate representative with
20   the authority to pursue litigation on her behalf. *See* Fed. R. Civ. P. 17(c); *Robidoux v. Rosengren*,

21

---

[5] The Court acknowledges, without deciding, that because "adoption is a process rather than a single event," M.M.'s rights to the DCYF file may more appropriately begin at the time the prior "parent-child relationship [is] permanently severed in anticipation of an adoption," rather than when the decree of adoption is finally issued. *In re Est. of Fleming*, 21 P.3d 281, 285 (Wash. 2001). However, and as noted above, it is unclear whether the prior parent-child relationship has been permanently severed.

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 8

638 F.3d 1177, 1181 (9th Cir. 2011) ("District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors."). The Ninth Circuit has addressed this issue as one of standing. *See, e.g.*, *United States v. Bennett,* 147 F.3d 912, 914 (9th Cir. 1998). And because standing to sue is rooted in the traditional understanding of a case or controversy, the Court lacks subject matter jurisdiction over this action absent M.M.'s authority to pursue the case. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016).

Rule 17(c)(1) lists the types of representatives who may sue on behalf of a minor in federal court: "a general guardian," "a committee," "a conservator," or "a like fiduciary." However, whether such representatives have capacity to sue is determined by the laws of the forum state. *See* 6A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1571 (3d ed.); *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 86 (1st Cir. 2010) ("State law generally governs an individual's capacity to represent a minor or incompetent in federal court."); *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002) (the district court must look to state law to determine whether the representative has capacity to sue on the minor's behalf).

In Washington, unless otherwise limited by court order, "[a] guardian for a minor is a fiduciary" who "has the duties and responsibilities of a parent regarding the minor's support, care, education, health, safety, and welfare." Wash. Rev. Code § 11.130.230(1); *see also id.* § 11.130.235(1). Washington law also directs the court to appoint a guardian ad litem to represent a minor in litigation if it determines that the minor's current guardian "is an improper person" to undertake such representation. *Id.* § 4.08.050. A guardian may be an "improper person" where the minor's interests "conflict with the interests and desires of the [guardian]." *In re Price's Welfare*, 535 P.2d 475, 479 (Wash. 1975).

In other words, "[i]f there was some reason to think that [the minor's representative] would not represent [the minor's] interests adequately, the district court would . . . be required (and

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 9

certainly would be empowered) to appoint a guardian *ad litem* to represent [the minor]." *In re Chicago, Rock Island & Pac. R.R. Co.,* 788 F.2d 1280, 1282 (7th Cir. 1986). The Ninth Circuit has time and again reaffirmed the district court's "legal obligation" under Rule 17(c) "to consider whether the [minor] is adequately protected" and "to take whatever measures it deems proper to protect [the minor] during litigation." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805 (9th Cir. 1986); *see also In re Guardianship of Ivarsson*, 375 P.2d 509, 510 (Wash. 1962) (determination of the "fees of a guardian and of his attorneys, paid from the estate of his ward" involves an "obvious conflict of interest" warranting appointment of a guardian ad litem); *In re Dunagan*, 447 P.2d 87, 90 (Wash. 1968) (in cases involving allegations of parental child abuse and an unfit home environment, "the best interests and welfare of the child may well conflict with the desires of the child's parents," such that a guardian ad litem should "represent the child at hearings held to determine what should be done with the child").

Here, Defendants have presented evidence that adoption proceedings are still ongoing and are apparently contentious. *See* Dkt. No. 44 at 4 (indicating that M.M. and her husband "need[ed] court and police intervention to prevent the [previous adoptive parents] from reclaiming custody of [O.M.]"); Dkt. No. 46-13 at 3, 8–10. And because there is no record of O.M.'s prior adoptive parents' relinquishment of their parental rights, there is some question regarding what (if any) rights they still may retain with respect to O.M. *See* Dkt. No. 44 at 4; Dkt. No. 46 at 3–4. For these reasons, the Court requests supplemental briefing on:

- Whether the previous adoptive parents retain any rights with respect to O.M. that are, or may be, relevant to this suit; and

- Whether the adoption proceedings pose any conflict of interest with respect to M.M.'s representation of O.M. in these proceedings.

To the extent either of the above questions can be answered in the affirmative or cannot be

ORDER DENYING MOTION TO COMPEL WITHOUT PREJUDICE AND ORDERING SUPPLEMENTAL BRIEFING - 10

answered satisfactorily, the Court requests that the parties also address whether a guardian ad litem should be appointed to represent O.M. under Rule 17(c)(2), and whether the Court should require that the previous adoptive parents be given notice and an opportunity to be heard with respect to Defendants' subpoena and renewed motion to compel and for a protective order (should they choose to file one). *See, e.g.*, *In re Hattori*, No. 21-MC-80236-TSH, 2021 WL 4804375, at *6 (N.D. Cal. Oct. 14, 2021) (imposing requirements on subpoena process "to ensure all interested persons have an opportunity to contest the subpoena if they wish").

If Defendants renew their motion, Plaintiff must meaningfully confer with them on a proposed protective order, and Defendants must include a certification of such conferral with their motion.

### III.  CONCLUSION

The Court therefore DENIES without prejudice Defendants' Joint Motion for a Protective Order and to Compel DCYF Compliance with Subpoena Pursuant to FRCP 45. Dkt. No. 44. The Court ORDERS each side to file a supplemental brief of no more than 3,500 words by no later than May 18, 2023. Should Defendants opt to renew their motion, they must do so no later than May 25, 2023.

Dated this 4th day of May, 2023.

Lauren King
United States District Judge